May it please the Court, my name is Andy Jacob of Sugar Thompson Kilroy. We represent Biltmore Associates, the trustee of the VisitTalk Creditors Trust, and I'd like to try to reserve five minutes for rebuttal. Counsel, there are two different insurance companies, Reliance and Twin Cities. Reliance went insolvent, as I recall. That's correct. Your complaint pleads that Twin Cities is a successor, but it doesn't plead any facts saying what that means. Now, sometimes when an insurance company becomes insolvent, a state receiver takes over. Sometimes when the insurance company becomes insolvent, then prior to legal action some other insurance company buys it cheap and assumes its obligations under its policies. And sometimes nothing happens to the knowledge of the insureds anyway, and what happens is they just buy a new insurance policy. Now, as far as I can tell from the record here, what happened here is that the policyholders just bought a new policy from Twin Cities after Reliance went belly up. Is there something in the record that shows that something to the contrary, that Reliance undertook to be responsible for or that Twin Cities undertook to be responsible for Reliance's policy obligations? The problem, first off, Your Honor, is that we pled a verbena to now. We pled that Twin Cities succeeded. I think the word successor is more a term of art that might mean a little bit more. And also we're the I thought either one was a legal conclusion rather than facts. Well, let's get to that point, please. We're the trustee, and we weren't there. We don't have all the facts that someone ordinarily might have. What we know is that there was a policy with Reliance that covered the entire year. That policy does not have any endorsements to it that changed the coverage, shifted to another carrier refund. You're talking about Reliance's policy? Right. That's what we know. That doesn't give you any right to sue Twin Cities. I understand that. We know that. We also know that there are endorsements that we don't know are valid or not, that we don't know that the insured consented to, that we don't know that the insured received consideration for, and we know that there is an insurance policy where Twin City purports to provide some coverage to the insured, and we don't know what the event was. All that we don't know would justify a motion to a court to delay decision until further discovery can be done. Which we did. It doesn't establish a right to sue Twin Cities if they didn't sell you the policy for the relevant time. This was a 12B6. We pled what we knew. Help me on the 12B6. When all this evidence came in, we said, don't consider that evidence before we have a chance to conduct some discovery into this, and we were not given that chance. Help me on the 12B6. It looks as though the case was resolved on a whole lot of things beyond the bare pleadings and the complaint. That's our position, yes, sir. But it also looks as though, at least in some respects, it was unobjectionable to the parties, but in some respects it was objected to, and it's a little hard to sort out. So what facts do we have to decide on? The facts that we have is that we pled the complaint. We do not believe the kind of complaint we pled is subject to the heightened fact-pleading standards of the Twombly case. We pled that there was some evidence that indicates that Twin City succeeded to the same responsibilities that Reliance had. So basically you pleaded successor, it was dismissed on 12B6, and anything else should wait for summary judgment. Wait for discovery so we can look at the coverage files and we can find out what happened in the middle of the year. The court made factual findings as to what happened, based on evidence that was not properly considered. The task is something else. Let's say you're right on all that you just laid out. You pled successor in interest. If they really were a successor in interest, then they would owe money on the Reliance policies, because they would have succeeded in interest to the good and the bad, the collection of premiums and the obligations to pay on the Reliance policies. And let's say you win because the court was wrong to consider all the other material. Does that necessarily mean you just go back and lose on summary judgment? I don't believe so. I believe that you're asking me to tell you what we're going to discover. If we discover that the insured agreed to this change in coverage, receive consideration for it. I don't see why that would matter. Suppose the insured says, no, no, no, I demand that you continue covering me. Reliance.  If Twin City and the insured never entered into a bargain, Twin City might be off the hook, depending what transpired between Reliance and Twin City, because under the A.R. Teeter's case, there are other factual situations where one insurer could incur the responsibilities of the one that went insolvent if it took its assets, perhaps took the assets in an improper plan to deny coverage, so that there doesn't have to be an express agreement with the insurer. Is there any evidence that even though it's supposed to be a 12B6, the district court handled it kind of like a Rule 56, and that may be grounds for reversal. But I'm wondering if we're wasting our time, because it looked as though there was no evidence at all that it really was a success, or it looked like it was just a company. The evidence that we have is that the exact dollar figure that was purported to be refunded to the insured is the exact figure to the cent that Twin City says it accepted as a premium. In exchange for nothing, the insured purportedly agreed to split its coverage period. We don't know that that happened that way, and it may be that when we look at this, that Twin City incurred the obligation by taking that premium, and we didn't agree that it would be less. In addition to that, there may really be a successor in interest, and not merely a new insurance company from whom a policy was purchased when the old one went belly up. Right, right. Just a minute, counsel. I guess I'm having a tough time. I read your complaint, the First Amendment, and the First Amendment complaint talks about a request for declaratory judgment. And under the request for declaratory judgment, it asks for a declaration that you become somehow an assignee of policies, that you become entitled to do some things under certain policies, and the district court looks at those policies. They look at the policies. Now, they're not attached to your amended complaint, so somebody had to put them in there. Not only that, but you ask him to look at the endorsement number 13 to the policy as part of your argument, and they ask for endorsement 99 and 100. And you object to the court looking at 99 and 100, but you have no trouble with looking at endorsement 13. Now, it seems to me that this district court, yeah, it may have been a motion to dismiss, but both of you were having them look at policies, and you were having them look at endorsements. And when they looked at endorsement you like, that was okay. When they look at endorsement they like, that's not any good. They shouldn't have done that. Now, you tell me, how do I, as an appellate judge, now looking at what you pled, which if I were the poor district judge and I was trying to determine on a request for declaratory judgment or a breach of contract or a breach of duty of good faith and fair dealing, how I'm going to look at this or bad faith if I don't look at the policies? And that's all the judge looked at. And the endorsements. The problem with what happened, Your Honor, is the last two endorsements clearly came about at a different date than the original policy and the original set of endorsements. So? Well, so. If you're going to look at the policy and you're going to do the declaration and you're going to give him some stuff, he's got to look at the total policy on a motion, and I think it was converted to a motion for summary judgment. He's got to look at everything that's there. But he doesn't take as true the contract documents that we don't rely on to establish our claim. We rely on the policy that we purchased at the end of 1999, which had the first set of endorsements as part of it. The fact that the insurer six months later writes up a different endorsement that changes the bargain and without evidence that we accepted that endorsement and that we receive consideration for changing the coverage, the coverage doesn't change. Well, I understand, but all I'm trying to say is it seems to me, and what my colleague is trying to get you to write it down to, we're only going to look at the pleadings. But the honest truth, in order to even examine this for a motion that was brought here or even to do it for the request for declaratory judgment on a motion for summary judgment, there were no documents in this record that shouldn't have been reviewed. Perhaps they shouldn't have been reviewed, but not to be taken as true for the matter asserted in them. I understand. That's your argument for another issue. But I'm just trying to say improperly taking in what they have and looking at them, that's one issue, but quite a different issue is whether they gave them the appropriate weight on the motion. Also, those last two endorsements constitute a separate contract. We talk about the insurance policy. In this case, there were two contracts. There was a contract for insurance. There was perhaps a contract to change the coverage reflected by those other two endorsements. We refer to the policy as being valid to establish our rights under the first contract. We don't refer to the endorsements 99 and 100 to establish the validity of our claim. They may be something that exists in relationship to our claim. When we were talking about this, we said to ourselves, if there was a letter that was a slander against us and we referred to it, yes, we've incorporated that into the complaint, but we're not referring to it where we're held to the truth of what's in that letter. We're just held to the existence of it. And perhaps we refer to 99 and 100 just to show that something happened, but not to show that it happened the way it is stated there. Well, it just seems to me that all you're suggesting is, well, on a motion, on a motion for a 12B6 motion, one should look at only the complaint. Okay, I agree with that, only the pleadings. But in this particular situation, we're not looking at the pleadings because you're not even looking at the pleadings. You're adding additional things to what I'm supposed to look at, including the insurance policy, including the endorsements that you want. And now if we're going to move to the second issue of what should be done on summary judgment, that's quite a different issue. But to argue that you can only look at whatever you put in the record on trying to determine whether we can issue the declaratory judgment, that doesn't seem to me to be the way I understand the rule. My argument is that you can only look at what is necessarily relied on by reference to support our complaint. The Perino case from this court doesn't say any document that's referred to. Have I got this right? I guess the judge never said it was converted to a Rule 56, right? The judge said it was not. The judge, after reframing it at the very end, said we don't have a right to conduct discovery because he only went by the complaint. So he said no discovery, it's a 12B6? Yes, sir. Now, I think, I can't remember for sure, I think the complaint says, basically, that the complaint was made during the or made and forwarded. Well, you tell me, does the complaint set out exactly when the, what was her name, the Hovde letter complaint was made and when the tender was made? Your Honor, I have never seen the Hovde letter, and it is not because I was not involved in the case. The Hovde letter is not in the record. This is a letter that is referred to. It was in some other case that is parallel to this case that we don't have anything to do with. The court. What would remand accomplish in the light of that Hovde letter? Your Honor, I don't know. You're not admitting. I've been told that the Hovde letter establishes the same claim, and my response was it's not proper to consider the Hovde letter. We should have a chance to have discovery to see what's going on, and the court said, well, you waived objecting. You say you have not had a chance to conduct discovery. Was there an order barring discovery, or are you just saying that there wasn't time to conduct discovery before the 12B6? We went right from the complaint to the 12B6. That was the first step in the case. How long was there between the complaint and the 12B6 motion? I don't remember for sure. We can check and see. What I'm thinking is. I mean, it came before the answer. Once or so. It came before the answer was due. Did the judge ever issue an order barring discovery? We made a Rule 56F motion. He denied that motion. So there was an order prohibiting you from doing discovery? You lost on the 12B6 saying give us enough time to do discovery. Part of our response to the 12B6 motion was to make a 56F motion, and that was not granted. So it sounds like this really is. It's a 12B6 or nothing. Absolutely. And it may well be a waste of time. I don't know that, Your Honor. And so that you can feel comfortable with it, if the deal was that we bought a year's worth of coverage and we bought secondary insurance policies and that's all that happened and Twin City gets to walk away, nothing changed the deal for the excess carriers. And it makes no sense that they should be off. The excess get off the hook if the primary gets off the hook. But if the primary was. Reliance gets off the hook because there was no tender. Reliance's excess gets off the hook. And if the claim was made too early, not during the Twin Cities period, then Twin Cities' excess carriers get off the hook. Am I missing something there? The insolvency of. Excess depends on primary. Depends on there being primary coverage, not on the primary paying the claim. And whether we triggered the primary coverage or not, by making the claim that we made depends on what the relationship between Twin City and Reliance was. Let me ask you a question which is going to change this, because now I've looked at the policy and we're now looking, the policy has one big exclusion right in the middle of it, which is the insurer shall not be liable to make any payment for loss in connection with any claim against the directors and officers. Yes, sir. Well, this was a claim by the insurer against the directors and officers. It was a claim by the insurer against the directors and officers, which was thereafter in the middle of the bankruptcy transferred to the creditors. That's not correct. This was a claim that the creditors had against the officers and directors. Well, but just a minute. The reason they got it is because it was first a claim by the corporation against the directors, and then as a part of the whole, it was transferred to the creditors. It was a claim of the corporation only by operation of the bankruptcy. It was a creditor claim. The bankruptcy took it, gave it to the trustee. There's an issue of law that hasn't been resolved in this circuit yet. We cite a district court case that we would like to discuss. My state, which I read, the Idaho District Court, In re Pendler, but I guess I'm trying to figure out. It doesn't seem to me that there is anything in this particular situation which would get you out under the exclusion. This is not a claim by derivative action. This is a claim at best by creditors who got it from the corporation themselves, and they're bringing it for the benefit of the total corporation. They're not bringing it as a derivative action. So how in the devil do I have a claim which does not get excluded under the coverage? You know, how would anybody have a claim? Insurance has to cover something. The directors and officers owe a debt. What it's for is, oh, that firm in Southern California, I can't remember the name of it. Whenever the stock went down, they'd file a suit against all the members of the board of directors and the officers for not telling them something bad that they knew themselves that would make the stock go down, so they'd breach their fiduciary duty. And you get D&O policies to protect against those claims. And if those claims are brought as a derivative claim and they're excluded under the insured versus insured clause, there isn't any coverage. The creditors extend credit, relying in part on the directors and officers being covered. If the trustee is regarded as a different entity than the insured, then the creditors are having the trustee bring their claim, and that's the claim that is covered. Is this, the way it's written, pretty typical way, it says, there's an exclusion for any claim brought by or on behalf of the company in any capacity. I think that would apply to the trustee in bankruptcy, except, and this is the exception that gets you some value from the insurance policy, a claim that is a derivative action on behalf of the company by a security holder. That's what takes care of that Southern California firm. It's our position, which we set up in the brief, that if a policy wants to specifically exclude a bankruptcy trustee when they, under an exclusion of the company, the policy should so state. It's my understanding that policy is on behalf of the company. I mean, the trustee is just standing in the shoes of the company. Not necessarily. In the In Re Ad Box case, which we cited in our other appeal, they talk about the trustee stands in one set of shoes when the trustee brings a claim that the company could have brought before the bankruptcy. The trustee stands in a different set of shoes when it brings a claim that's brought by the creditors after the bankruptcy. And it's our position that we are bringing this claim in different shoes than just a representative of the company. If for no other reason, then we're not allowed to bring it in the shoes of the company. We've gone over time because it's complex and your argument's been very helpful, but I should probably excuse you now. Thank you. Good morning, Your Honors. My name is Michael Perlis. I'm counsel for Twin City Fire Insurance Company. Counsel, I've got a real problem here. Your Honor, may I? My reading of the record is you're right. You win. But you won too soon. I don't see how you can win this on a 12B6. It seems like it has to go to a Rule 56. The answer to that, Your Honor, and I respectfully disagree, is the following. Under 12B6, Judge Martone did exactly what he was required and empowered to do. He reviewed. And he converted. He could have said converting it to a Rule 56 so I can consider all these other documents, and then he could have decided on that basis whether to grant a Rule 56F motion for continuance to allow some discovery, but he didn't. He didn't need to, and here's why, Your Honor. The complaint on its face was deficient. I'm sorry? The complaint on its face was deficient. It used conclusory language as to successorship, which the Supreme Court in Bell Atlantic last year disapproved, so he could have under 12B6. Which case did the Supreme Court disapprove? It's Bell Atlantic, Your Honor. It's Judge Souter. Twombly case? I don't remember the last one. Bell Atlantic versus Twombly, I think it was. 2007. He did not disapprove that language. What Bell Atlantic versus Twombly said was that if what the complaint pleads is something that's inherently implausible, the mere notice without any supporting facts is not sufficient to avoid a 12B6, but there's nothing inherently implausible about an insurance company succeeding to the interests of another. Sometimes the regulators, when they see an insurance company is shaky, put together a deal and strongarm everybody into it where the new insurance company takes over the old one and succeeds to its obligations. I think, Your Honor, what Bell Atlantic said was that when you plead a legal conclusion, the court is not bound by that conclusion. Yeah, but it said more. I think it was an antitrust case. It was an antitrust case. Where they said, this just doesn't make any sense on its face, so we need some more facts. But they didn't just eliminate notice pleading and Rule 8. No, but Your Honors also, for example, in Stack, said legal conclusions do not survive a motion to dismiss. The old Republic case, which is very similar and actually cited by Biltmore. You're right about the words, but you're extending the cases way beyond the facts and circumstances of the cases. Rule 8 is still there, and also the official forms that are approved in the back of the Federal Rules of Civil Procedure are still there. And they say you can just plead Richard Roe collided with John Doe negligently at an intersection on May 8, 2008, wherefore Richard Roe is liable to John Doe for damages and injuries thus caused. I think the 97 Old Republic case, Your Honor, from the Southern District, which Biltmore relies on, of New York, is helpful. Because in that case, the court said, you don't have to apply Rule 9 to this pleading. Rule 8 is sufficient. Well, it's not a Rule 9 issue at all. It's not fraud. Right, but the court said, we are not going to accept a label of alter ego for purposes of Rule 8. You're going to have to plead some facts to demonstrate alter ego. I don't think successorship and alter ego are different concepts. But what the court did was to consider, as this court said it couldn't. Successorship is inherently plausible rather than inherently implausible. As is alter ego. It's not unusual. Neither is alter ego in pleading. Sometimes it is, sometimes it isn't. What the court did was to say, okay, you've referred to all of these insurance policies. I am entitled under stack to look at these insurance policies. Not just the portions you say I'm entitled to look at, but I'm entitled to look at the entire document. I would think you'd also be entitled to look at more, like what the deal is between the end of reliance and Twin Cities. That's exactly what happened, because the endorsements 99 and 100 to the reliance policy, which the court was entitled to look at under 12B6 without converting it to a Rule 56 motion under stack. Why, wasn't there objection? It doesn't matter whether they object. There was objection in stack, too, because what the court said, the plaintiff said, there is we only cited this portion of the document. Okay, let me look at them again. Where are they now? The 99 and 100? Yeah. They're attached to, I believe it is exhibit 5. Never mind, I don't have Bates stamps, so it won't be any good anyway. But they're endorsements 99 and 100 that talk about a cancellation and a refund of $8,126.17, canceling the policy on July 15, 2000. And then you will see that there is a purchase of the Hartford policy effective July 15, 2002, a period December 15, 2001, but that's not a full policy period. And the policy premium is that amount. So what Judge Martone said is, okay, I've now looked at the entire policy, and the fact that they don't have it doesn't mean it's not authentic or that the court can't consider it. And any kind of successorship. Let me ask you something else. Do we have, and can we look at, the evidence of when the claim was made in the Hovde case and when it was tendered? The answer to that is, and I think it goes under Your Honor's view in Manzarek, that normally you'd give somebody an opportunity to replead unless there is a determination of futility. And that's what Judge Martone was then looking at. Whether or not, notwithstanding the fact that Biltmore didn't ask for leave to replead, and specifically disclaimed it in its reply brief on page 14 in this court. So we don't have it, but it would be futile. It's futile for a number of reasons, but that's what Judge Martone was looking at. One reason for futility would be it's a corporation making a claim on its own behalf. Now, do we have the Hovde complaint so we can see whether it's a derivative claim that falls on the exception to the exclusion? Yes. The Hovde complaint is really there for a different reason. The Hovde complaint is there to demonstrate that an interrelated claim was made prior to the policy of insurance at issue and therefore would not be covered since our policy is a claims made and reported policy. Wait a minute. What I really want to know right now is. The IBI? I want to know if the Hovde complaint that we have in the excerpts of record shows that it fell within the exclusion and not within the exception to the exclusion. No. The Hovde complaint is for an unrelated matter. The IBI exclusion the court never ruled on, but the IBI. What does IBI mean? Insured versus insured. Oh. Okay. The insured versus insured exclusion applies, and we argued it applied, and the court can certainly utilize it to affirm the district court's decision on the following ground. The complaint brought by the trustee was brought in the name of the corporation, not for the benefit of creditors. The duties that are alleged to have been violated were the duties to the corporation. The policy says that the insured versus insured exclusion applies for suits brought or maintained by the insured company in any capacity. Which policy? When I'm looking at the reliance policy, it doesn't use those words. Yeah, it does, Your Honor. Let me show you, if I may. Maybe I'm missing it. Both the reliance policy and the Twin City policy say the same thing. If you look at exclusion under Exclusions D, it says brought or maintained by or on behalf of the company or any director in any capacity, except. Except a claim that is a derivative action. Correct. So what I really want to know is, did the pleading, since it's a 12B6, establish that this was not a derivative action? It was, yes. It was established that it was not a derivative action because the original claim was brought as an action against these directors and officers by Biltmore, the trustee, asserting claims that belonged to the corporation directly. And if Your Honor will recall, this court in the DeSalvo case said there was no difference between the pre-debtor corporation and the post-reorganization corporation. And therefore, it is the company, the case that they cite, which is the federal insurance unreported decision from the Western District of Pennsylvania, actually goes on to say, well, we think they're different corporations and you have to say something specific in the exclusion for it to apply. It goes to say, well, there are other courts that disagree with us. And among the courts that disagree, according to the Western District of Pennsylvania, was this court, citing DeSalvo. But in any event, even if some special language were required, the in-any-capacity language, it seems to me, would suffice and is far more clear than attempting, since this policy is a worldwide policy, to list every conceivable organization or entity around the world that could have brought a claim against directors and officers based upon assertions of corporate misconduct. I'm wondering if I need to tell me whether I do or do not have to get beyond the proposition that this claim is made on behalf of a creditor's trust rather than on behalf of the shareholders. The creditor's trust is asserting a claim directly assigned by the corporation on behalf of the corporation for the benefit of, in essence, the creditors of the corporation. It has nothing to do with the shareholders. In fact, as we know, in most reorganizations, the shareholders are wiped out and it is the creditors that succeed to whatever remains of the assets of the corporation. This is not a derivative action. And I don't think anyone contends that it is. But getting back to, and I think on that basis alone, on the insured versus insured, this court can sustain the decision. Let's see, would that mean that if an insurance company issues a D&O policy, there's a derivative action by the shareholders because the directors, let's just take an extreme case, they looted it, they stole all the money from the corporation, leaving it in an empty shell. The corporation then goes bankrupt. Yes. The shareholders now have a good claim but no collectability. They also have no claim, Your Honor, because, as you will recall, under the bankruptcy law, the corporation obtains the right to pursue that claim. The shareholders can no longer pursue the corporate claim. Derivative actions are, in essence, barred by operation of the bankruptcy court. If the trustee pursues the claim, does the trustee then have to give the money to the shareholders whose assets were looted? No, Your Honor, because at that time it would be the order of priority of payment in the bankruptcy law that would apply. Unless the contractor might remain with empty pockets in the IRS or some supplier might get the money. That's correct, Your Honor. I mean, that's what the bankruptcy laws normally do. The shareholders are among the lowest priorities available under bankruptcy law, and everybody else, unless it's a consensual plan, gets 100 percent of his or her money before the shareholders get anything. So would that mean that dates really don't matter, and it really doesn't matter whether Twin Cities is a successor or not? Yes, Your Honor. By virtue of the insured versus insured exclusion, everything else would arguably be irrelevant, except Judge Martone decided to dismiss on the grounds of a failure to plead with sufficient particularity, not under nine days. You did no both, so. Yes, Your Honor. What I'm wondering is, since we reviewed de novo and we can affirm on any ground, we need not decide whether the district judge was right on this or that. On 12B6, correct. On whether the answer is right. That is correct, Your Honor. Would it be correct that if the exception for company suits against officers and directors applies and the exception to the exclusion for derivative actions does not apply because it's not a derivative action, then we affirm across the board without deciding anything else? That is correct, Your Honor, and it would also address all of the excess carriers who, incidentally, would like to be heard on their unique issues at some point during this argument. If somebody saves time for them, it's... Well, I'm happy to save time, Your Honor, but I want to be responsive to the court's questions in the first instance. But I think that the only document Judge Martone considered in the 12B6 arena was the policy of insurance, the two policies which he was entitled to consider under a 12B6 without converting it. All of the other documents were really considered a la Manzarek to determine whether or not it would have been futile to allow the plaintiff to replead. And I think under those circumstances, what Judge Martone did was exactly right and very thorough and careful, rather than attempting to transform this into a Rule 56. And the plaintiff admitted that it had nothing further to add. It did not oppose what we put forward in our motion to dismiss on any evidentiary basis. It filed a Rule 56F, basically saying we have nothing more to add. We cannot say anything further than what we've already said in a complaint. But he says we want an opportunity for discovery. That's right. But that's the problem that you have, for example, if you look at the First Circuit's decision in DM Research, the First Circuit says a bad claim or a speculative claim is not a ticket to discovery. Sometimes you just need to do your homework first. The trustee had the bankruptcy court's powers to have done its homework if it wanted to. Your Honor asked about discovery. The issue of discovery is a red herring. There was a bankruptcy proceeding. There are rules in the bankruptcy court that allow discovery to be conducted on virtually any issue relative to what's going on in the estate. They had years of opportunity if they were concerned about the policy, concerned about endorsements, concerned about claims. How many years? I thought that 12B-6 came right after the complaint. I'm talking about, Your Honor, the bankruptcy proceeding that preceded the litigation. The litigation was initiated as part of the plan or pursuant to authority granted in the plan. But prior to that time, there was a bankruptcy proceeding. And there are rules in the bankruptcy court that allow discovery to be undertaken with respect to assets of the estate, property of the estate. And if anyone had any concern about that, the trustee, for example, of Visitalk, the powers of the bankruptcy court could have been used during that period to obtain the documentary evidence that they thought they needed. They didn't. Now what they do is they file a speculative claim, and they hope to obtain discovery to establish it. That's really not what litigation is for. That's what Bell Atlantic criticized and said, where there's a potential for abusive litigation, the complaints need to be more rigorously scrutinized. And what is greater as a potential for abusive litigation than these bankruptcy trusts that are empty vessels? This one, in fact, according to the record, had assets of $30,000 and liabilities of about $750,000 that are controlled by the trustee exclusively, that have no decision-making power, that go out and try to pursue claims to gather money to pay out ultimately to creditors. The potential for abuse in that kind of litigation is exactly the kind of abuse which the Supreme Court cautioned against in Bell Atlantic. It's always a delicate business, Sam, deciding whether it should be 12B6 or 56 when the facts are complex. That's why I've been looking for simplicity. I think Your Honor has it with the insured versus insured exclusion. And for that, discovery wouldn't have mattered? No, Your Honor. It would not have. Thank you, Counsel. Thank you. There is one thing you all ought to know. While I very much appreciated being called Judge Mills because it increased my stature and my good looks, poor Judge Mills lost when you gave him Manzer. Oh, I am so sorry, Your Honor. I meant no offense, and I'm sure none was taken. That's okay. I just thought we ought to put that out there so everybody knew. We probably sat in the wrong chairs. The wrong chairs make it more amusing for you. Thank you. If I may, Your Honor, may my colleague make a presentation? Thank you, Counsel. May I be excused, Your Honor? Yes. Thank you, Counsel. Good morning, judges. E.J. Kotelek on behalf of Old Republic Insurance Company, one of the excess carriers in the case. Obviously, if the court is inclined to find no coverage under the primary policies that I think one of the judges mentioned earlier, there would be no coverage under the excess policies. But I just want to take a couple of minutes to mention that there are independent reasons to affirm the dismissal as to the excess carriers, regardless of how this court views whether there may or may not be coverage under the primary policies. And one of the things that Counsel for Biltmore mentioned I want to respond to immediately is he indicated that there would be coverage obligations under an excess carriers policy, even if there was no payment by the primary carrier. And, judges, that's directly contrary to the language of the excess policies in this case. The excess policies require exhaustion. And, for example, the Old Republic policy language, and again, this is something that can be resolved without any discovery, just by reference to the language of the insurance policies that are in the record. The Old Republic policy explicitly states that its liability shall attach only after underlying insurers shall have paid in legal currency the full amount of the underlying limit. And this language is typical. Pretty typical. It's very typical. And payment is required, judges. If you look at the Arizona cases that have interpreted the status of excess carriers and their obligations, it's very, very clear. The one in particular that's important here I would submit is the Maricopa County v. Federal Insurance Company case. It's cited on page 13 of our brief. That involved an insolvent primary carrier. And what the Court of Appeals said, and this language, by the way, in the Court of Appeals that I'm referring to, was relied upon by the Arizona Supreme Court in the Gilmore case that we cite on page 13, and relied upon by the Ninth Circuit in the AMHS insurance case that we cite on page 13 of our joint brief. And what Maricopa County says is the policy language means what it says. If there's no payment, the obligations of an excess carrier are not triggered. Period. They don't come into play. The other point I would make with respect to this issue is I submitted a supplemental citation of authority on April 9th to the court and cited a case, Arizona Court of Appeals case, that was decided just six months ago, the Regal Homes case. That case says very clearly, relying on Arizona Supreme Court authority, that if you're an excess carrier, you have no duty to defend, to evaluate settlement offers. It even says you have no duty to do anything at all until the underlying limits are exhausted. Well, that's the situation here, and that's not going to change, judges, if there's any further discovery in this case. That exhaustion, the fact that there is no exhaustion, there is no payment, is undisputed. You mean just because they pleaded in their 12b-6, the insurance company did not pass what they owed under the policies, you're off the hook? Well, the excess carriers have no obligation to do anything. So the breach of contract action, the bad faith action, those claims don't exist. They're subject to dismissal based solely on the fact that everybody agrees there's been no payment of the underlying insurance, and that's an absolute policy. The complaint pleads that there has been no payment under the underlying insurance? Correct. The whole basis for the complaint is nobody's paid anything. So the fact that the complaint pleads that there's been no payment on the underlying insurance is the end of it? That in and of itself is the end of it for the excess carriers, and that's the point I want to stress here. I suppose if they won, if the plaintiffs won, there should be payment, and then the judgment was paid, then the excess carriers would be back on the hook. The law is clear in Arizona. Until there's payment, the excess carriers have no duties at all. So there can't be a breach of contract until there's payment by the underlying carriers? The answer would be then that if the plaintiffs won and there was payment, then the excess carriers would have to pay. Until there's been payment, the excess carriers have no responsibilities at all. Once there's payment ---- I keep asking you about what happens if A and you keep killing me. What happens if not A? Okay. I apologize. I think I understand where you're going now. And I'm just trying to find out if I'm mixing that up. If there's a finding of coverage and the underlying carriers all pay, the excess carriers, assuming there's coverage and that finding is binding on it ---- I'm not disputing that if there's coverage and there's payment, there's got to be payment. The problem here is ---- Who pays the attorney's fee? I'm sorry, Your Honor? Who pays the attorney's fees? At what point in time? All along the line here. If the successful party is the insurance carriers, under Arizona law, the insurance carriers pay. The prevailing party in the case, under Arizona law, is entitled to payment of their insurance, of their attorney's fees. So all along the line here, if Biltmore is unsuccessful, then they pay the attorney's fees for the excess carriers and the underlying carriers. If Biltmore is successful, the court has discretion to award attorney's fees to Biltmore. And that's exactly what happened in this case. There was an award of attorney's fees because the insurance companies were the successful parties. Quickly, the second point I want to make is ---- Go ahead. You want him to make more points? Go ahead and ask. No, I wasn't going to ask the question. I was going to say I think the time is gone. Could I just say also there is an issue concerning whether or not the coverage of the excess policies was avoided because of these Morris-Dameron agreements? That's addressed in the brief, but that's the second independent reason to find a dismissal in favor of the excess carriers should be upheld. Thank you. Thank you, counsel. Take 30 seconds. I just want to mention that Rule 18 addresses making a contingent claim that would depend on success against a claim against some other party and that the In Re Advox case distinguishes that for some purposes, just because the pre-bankruptcy entity and the bankruptcy entity for some purposes are the same, if you're representing them, you're not the same. All the cases that say they're the same are saying it for the benefit of creditors, and courts really look at why the question is being asked when they say that they're the same. Thank you. Thank you, counsel. Very helpful arguments. Thank you very much. They were very helpful arguments. Diltmore v. Twin Cities is submitted. Thank you, counsel. Pardon? Oh, yes. Next is In Re Costa.
judges: Kleinfeld, Smith, Mills